1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                     **EASTERN DISTRICT OF CALIFORNIA**

10

11   SANDRA LUZ SANCHEZ DE GUTIERREZ, )   Case No.: 1:19-cv-00463-BAM
                                      )
12          Plaintiff,                )   **ORDER REVERSING AGENCY'S DENIAL OF**
                                      )   **BENEFITS AND ORDERING REMAND**
13          v.                        )
                                      )
14   ANDREW M. SAUL,[1] Commissioner of )
     Social Security,                 )
15                                    )
                                      )
16          Defendant.                )
     _____)

17

18                          **INTRODUCTION**

19          Plaintiff Sandra Luz Sanchez de Gutierrez ("Plaintiff") seeks judicial review of a final decision

20   of the Commissioner of Social Security ("Commissioner") denying her application for disability

21   insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security

22   income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on

23   the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

24   McAuliffe.[2]

25   _____

26   [1]      Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of
     Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
27
     [2]      The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).
28   (Doc. Nos. 7, 8, 18.)

                                            1

1    Having considered the parties' briefs, along with the entire record in this case, the Court finds

2    the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the

3    record. Accordingly, the Court will direct that the Commissioner's determination be REVERSED and

4    REMANDED for further proceedings.

5    **FACTS AND PRIOR PROCEEDINGS**

6    Plaintiff protectively filed applications for a period of disability and DBI and for SSI on

7    September 29, 2015. AR 232-241.[3] In both applications, Plaintiff alleged disability beginning

8    September 5, 2015. AR 232, 236. Plaintiff's applications were denied initially and on reconsideration

9    and Plaintiff subsequently requested a hearing before an ALJ. AR 121-137. ALJ Sharon L. Madsen

10   held a hearing on May 22, 2018, and issued an order denying benefits on July 3, 2018. AR 8-27, 45-

11   70. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the

12   ALJ's decision the Commissioner's final decision. AR 1-7, 229-231. This appeal followed.

13   **Relevant Hearing Testimony**

14   The ALJ held a hearing on May 22, 2018, in Fresno, California. Plaintiff appeared in person

15   with her attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Paul Sanford also appeared. AR

16   45.

17   In response to questioning by the ALJ, Plaintiff testified that she is divorced, has no children,

18   and lives in a house with a friend. She receives food stamps, has a drivers' license, and drives herself.

19   Plaintiff has a high school diploma. When asked about her daily activities, Plaintiff testified that she

20   sometimes needs help showering or dressing due to sharp pain in her hands and feet. She is able to

21   perform light household chores, can use the microwave, and has a friend who helps her with shopping.

22   Plaintiff attends church on Sundays but does not visit with friends or family. During a typical day,

23   Plaintiff watches television and tries to water her plant. When she walks for more than three or four

24   hours, she experiences pain and lies down and sleeps. Plaintiff testified that she naps every day due to

25   her pain medication. AR 49-51.

26   Plaintiff testified that she previously did part-time work in an office setting. Her duties

27

28   [3]    References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

included filing paperwork with the court and Spanish translation for clients. She also worked in fast food. Plaintiff's work history also stated that she was self-employed and worked for a temp agency, although Plaintiff did not recall performing that work. AR 51-53.

Plaintiff further testified that she experiences neck pain that comes and goes and radiates to different places in her body. She experiences both pain and stiffness all over her body but particularly in both hands and in her brain. The pain in Plaintiff's right hand is worse than her left hand and she described it as a sharp pain that comes and goes. Sitting, standing, and walking are all uncomfortable and she has difficulty turning her head. Plaintiff experiences constant lower back pain and standing is uncomfortable. Plaintiff has been prescribed hydrocodone and Tylenol with codeine and she also uses a heat pack. Plaintiff's medications help with her pain. Plaintiff also takes medication for blood pressure and heartburn. She has difficulty sleeping and sleeps for an hour or two per night. AR 53-57.

Plaintiff further testified that she has difficulty carrying one gallon of milk due to pain in her hands. She can stand for an hour and walk around her house or for half a block. Plaintiff can sit for three or four hours before she must stand. She has difficulty picking up small objects like pens and pencils but can hold something larger like a cup. If she drops something on the floor, she cannot bend over or squat down and pick it up, so she uses a grabber to help her. Plaintiff has difficulty putting on shoes and socks, does not climb stairs, and experiences pain when reaching above her head. AR 57-59.

According to Plaintiff, she experiences anxiety but does not have difficulty being around people. She sometimes has difficulty paying attention when watching television. She needs help paying her bills and budgeting. Plaintiff takes medication for her anxiety and the medication helps her. Plaintiff has a history of alcohol use but quit three years ago and does not currently drink. When asked about her positive toxicology screen for methamphetamine, Plaintiff testified that she has never done any drugs. AR 59-61.

In response to questioning by her attorney, Plaintiff testified that she can concentrate for an hour before she must take a break. She can stand for an hour before she must sit and can sit for fifteen or twenty minutes before she must stand again. Plaintiff can walk for a block or half a block before she must rest for fifteen minutes. Plaintiff experiences pain in her cervical spine and neck every day, but the pain is worse at night. Plaintiff describes her pain as a nine out of ten and testified that she has

been hospitalized due to her pain. She does not use ointments or other forms of treatment to help with her pain. Plaintiff testified that sweeping aggravates her back pain but stated that no other activities increase her back pain. She experiences headaches daily and has approximately ten bad headaches per month. She does not have difficulties with smells, sounds, or light. Plaintiff experiences dizziness and nausea as a result of her medications but these symptoms have improved since her medication has changed. Plaintiff stopped seeing her mental health provider and currently receives her mental health medication from the hospital. She has never been hospitalized as a result of thoughts of self-harm and her medication is helping with her depression. AR 61-66.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE Paul Sanford. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work background as Plaintiff who can lift and carry fifty pounds occasionally, twenty-five pounds frequently, sit, stand, or walk for eight hours in an eight-hour work day, and was limited to simple, routine tasks. The VE testified that there would be work available at the medium exertional level as a cleaner industrial, cook helper, and food service worker hospital. AR 67.

For the second hypothetical, the ALJ asked the VE to assume an individual who can perform light work, lift and carry twenty pounds occasionally, ten pounds frequently, sit, stand, or walk for eight hours in an eight-hour work day, and was limited to simple, routine tasks. The VE testified there would be work available at the light exertional level as a ticket marker, cashier II, and inspector and hand packager. AR 67-68.

For the third hypothetical, the ALJ asked the VE to assume that the individuals described in the first two hypotheticals would be off task for twenty percent of the day. The VE testified that there would be no work available. AR 68.

Plaintiff's attorney then asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume the same individual described in the ALJ's first hypothetical, except this person would be limited to walking and standing to four hours in an eight-hour work day. The VE testified that there would be no jobs available at the medium or light level and the hypothetical individual would be limited to sedentary jobs. AR 68-69.

4

Plaintiff's attorney then asked the VE to assume the individual in the ALJ's second hypothetical would miss two days per month. The VE testified that, based on his research, industry periodicals, and labor market surveys, that would be an excessive number of absences and there would be no work available. AR 69.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 8-27. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017 and had not engaged in substantial gainful activity since September 5, 2015, the alleged onset date. AR 13. The ALJ identified cervical degenerative disc disease, lumbar facet disease, depression, anxiety, alcohol abuse, and methamphetamine abuse as severe impairments. AR 13-14. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 14-15. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work and could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for eight hours in an eight-hour workday, sit for eight hours in an eight-hour workday, and was limited to simple routine tasks. AR 15-19. The ALJ further found that Plaintiff had no past relevant work, was defined as an individual closely approaching advanced age on the alleged onset date, had at least a high school education, and was able to communicate in English. AR 19. Transferability of job skills was not an issue because Plaintiff did not have past relevant work. AR 19. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 19-20. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 5, 2015, the alleged onset date, through the date of the decision. AR 20-21.

1

**SCOPE OF REVIEW**

2  Congress has provided a limited scope of judicial review of the Commissioner's decision to

3  deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this

4  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

5  42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

6  402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

7  1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as

8  adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be

9  considered, weighing both the evidence that supports and the evidence that detracts from the

10  Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the

11  evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g.,*

12  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

13  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

14  and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of*

15  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

16

**REVIEW**

17  In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

18  substantial gainful activity due to a medically determinable physical or mental impairment which has

19  lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

20  1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such

21  severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

22  her age, education, and work experience, engage in any other kind of substantial gainful work which

23  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

24  burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

25  1990).

26

27

28

6

1

### DISCUSSION[4]

2

#### A.  The ALJ's RFC Finding

3

Plaintiff argues that the ALJ erred in formulating her RFC because the ALJ made an

4

independent evaluation of Plaintiff's functional limitations. (Doc. No. 14 at 6-9.) Specifically, the ALJ

5

rejected the medical opinions on file and relied on her own functional analysis without pointing to any

6

medical opinions that supported her conclusion. (*Id.*; Doc. No. 16 at 2-5.)

7

Here, the ALJ found that Plaintiff was able to perform medium work and could lift and carry

8

fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for eight hours in an

9

eight-hour workday, sit for eight hours in an eight-hour workday, and was limited to simple routine

10

tasks. AR 15. A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20

11

C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c)

12

(defining an RFC as the "maximum degree to which the individual retains the capacity for sustained

13

performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs

14

medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of*

15

*Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a

16

claimant's] medically determinable impairments"—whether severe or not—when assessing the RFC.

17

20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

18

Consultative examiner Emmanuel Fabella, M.D. and State agency medical consultants L.

19

Kiger, M.D. and C. Bullard, M.D. provided opinions regarding the effects of Plaintiff's physical

20

impairments. *See* AR 18; *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical

21

opinions as statements that "reflect judgments about the nature and severity of your impairment(s),

22

including your symptoms, diagnosis, and prognosis, what you can do despite your impairment(s), and

23

your physical or mental restrictions."). Dr. Fabella opined that Plaintiff could lift and carry twenty

24

pounds occasionally and ten pounds frequently, walk and/or stand for four hours in an eight-hour

25

workday, had no sitting limitations, could occasionally climb, balance, kneel, crawl, and walk on

26

27

---

[4]       The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

28

1    uneven terrain, and should avoid climbing ladders, working at heights, and exposure to cold weather.

2    AR 18, 467-472. The State agency medical consultants, in turn, opined that Plaintiff's physical

3    impairments were nonsevere. AR 18, 87, 100-101.

4        As to Plaintiff's mental impairments, there are no opinions in the record from treating or

5    examining physicians related to Plaintiff's functional limitations. The only medical opinions in the

6    record which address Plaintiff's mental impairments were provided by State agency medical

7    consultants G. Ikawa, M.D., and Uwe Jacobs, Ph.D. *See* AR 19, 72-80, 92-120, 385-609. Dr. Ikawa

8    opined that Plaintiff did not have mental impairments and Dr. Jacobs opined that Plaintiff's mental

9    impairments were nonsevere. AR 77, 102.

10       The ALJ gave "very little weight" to all of the medical opinions in the record. Specifically, the

11   ALJ found that Dr. Fabella's and the State agency physicians' opinions were all inconsistent with and

12   unsupported by the record. AR 18-19. In other words, the ALJ disagreed with all medical opinions in

13   the record and found that, contrary to the State agency physicians' opinions, Plaintiff's impairments

14   would result in some work-related restrictions. With respect to Plaintiff's physical impairments, the

15   ALJ found that those work-related restrictions would be less limited than those to which Dr. Fabella

16   opined. The ALJ's RFC determination was solely based on her own interpretation of Plaintiff's

17   testimony and the medical evidence. Without relying on any medical opinion regarding what work-

18   related restrictions would be appropriate, the ALJ added limitations to the RFC and concluded these

19   limitations were sufficient to address Plaintiff's impairments.

20       It is well-settled that an ALJ may not render her own medical opinion and is not empowered to

21   independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir.

22   1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion);

23   *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute

24   his own judgment for competent medical opinion, and he must not succumb to the temptation to play

25   doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.

26   1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional

27   terms"); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper

28   for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal.

1  2008) (opining that an ALJ is not qualified to extrapolate functional limitations from raw medical

2  data).

3  The Commissioner contends that there was sufficient evidence in the record to evaluate

4  Plaintiff's functional limitations and the ALJ was permitted to draw logical inferences from the

5  medical evidence in formulating the RFC. (Doc. No. 15 at 5-8.) However, here the ALJ did not simply

6  synthesize all the medical evidence and opinions to reach an RFC determination. According to the

7  ALJ, the RFC determination was based solely on treatment notes, test results, and Plaintiff's

8  testimony. *See* AR 18-19. However, Plaintiff's treatment records and test results did not provide

9  sufficient indications of Plaintiff's functional limitations and were unclear as to their impact on

10  Plaintiff's ability to work. Thus, the ALJ apparently formulated an RFC based on her interpretation of

11  the medical evidence, which is improper. The ALJ was not qualified to translate the data into

12  functional limitations and engage in her "own exploration and assessment" of Plaintiff's impairments.

13  *See McAnally v. Berryhill,* 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Day v.*

14  *Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)). Additionally, Plaintiff's treatment records and test

15  results did not provide sufficient indications of Plaintiff's functional limitations and were unclear as to

16  their impact on Plaintiff's ability to work.

17  Without a medical opinion to support the conclusion that Plaintiff was able to perform medium

18  work and could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand

19  and/or walk for eight hours in an eight-hour workday, sit for eight hours in an eight-hour workday, and

20  was limited to simple routine tasks, the ALJ's RFC lacks the support of substantial evidence. *See Perez*

21  *v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches

22  conclusions about claimant's . . . capacity without any assessment of residual functional capacity by a

23  physician, the ALJ's conclusions are not supported by substantial evidence"); *Goolsby v. Berryhill*,

24  2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple

25  routine tasks" in RFC when the record did not contain medical opinions supporting this limitation);

26  *Shipp v. Colvin,* 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since . . . the record contains

27  no assessment by a treating or examining doctor regarding the effect of plaintiff's physical

28  impairments on her ability to function, it appears that the ALJ's physical residual functional capacity

assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."). Accordingly, the ALJ erred in evaluating Plaintiff's RFC.

The Court must also consider whether the ALJ's error was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.* (citations omitted). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). However, the Court may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted).

Here, the Court cannot find that the ALJ's error was harmless. The ALJ determined Plaintiff's RFC without a medical opinion that defined Plaintiff's limitations and the ALJ's specific determinations regarding Plaintiff's functional limitations lacked the support of substantial evidence. The Court cannot confidently conclude that the RFC assessment would have been the same absent this error. *See Karen E. v. Berryhill*, 2019 WL 1405835, at *4-5 (C.D. Cal. Mar. 27, 2019) (remanding where ALJ assessed RFC without the benefit of any physician opinion regarding the limitations resulting from plaintiff's carpal tunnel syndrome, so for the ALJ to assess RFC required him to act "as his own medical expert and translate the data himself, something he was not qualified to do"); *Kohlbatz v. Berryhill*, 2018 WL 2059645, at *4–5 (C.D. Cal. Apr. 30, 2018) (remanding where ALJ erred by basing RFC on ALJ's own lay interpretation of the medical record, and such RFC is not supported by substantial evidence); *Zazueta v. Colvin*, 2014 WL 4854575, at *5 (C.D. Cal. Sept. 29, 2014) (remanding where ALJ rejected only medical opinion regarding functional limitations, then assessed plaintiff's RFC on ALJ's own lay interpretation of medical records, so the RFC assessment was not supported by substantial evidence).

## B.  Remand is Required

The court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (citation omitted). In general, when the Court reverses an ALJ's decision "the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, Plaintiff has requested remand, and the circumstances of this case indicate that there are outstanding issues that must be resolved before a final determination can be made. Additionally, in light of the evidence as a whole, the Court has serious doubts that Plaintiff was, in fact, disabled within the meaning of the Social Security Act as of the date of the ALJ's decision. Further administrative review may remedy the ALJ's error and thus remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *see also Garrison*, 759 F.3d at 1021 (reasoning that the Court may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**<u>CONCLUSION</u>**

Based on the foregoing, the Court finds that the ALJ's RFC finding warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ should reconsider Plaintiff's RFC. If deemed necessary, the Commissioner may hold a further hearing and receive additional evidence. The ALJ shall then proceed

11

through steps four and five to determine what work, if any, Plaintiff is or was capable of performing and for what period of time.

Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Sandra Luz Sanchez de Gutierrez and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 23, 2020**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE